KENTUCKY NATIONAL INSURANCE
COMPANY, Appellant,

v.

EMPIRE FIRE AND MARINE INSUR-
ANCE COMPANY, Alpha Leasing
Co., Inc., Todd Royse, Julie Speakes,
Huntington National Bank, Hunting-
ton LT, and Unknown Insurance Co.,
William "Bill" Ward, and Ronald J.
Carney, Appellees.

Empire Fire and Marine Insurance
Company, Cross–Appellant,

v.

Kentucky National Insurance Company
and Alpha Leasing Co., Inc.,
Cross–Appellees.

No. 22A04–0810–CV–616.

Court of Appeals of Indiana.

Jan. 7, 2010.

Galen L. Clark, Travis & Herbert, PLLC, Louisville, KY, Attorney for Appellant and Cross–Appellee Kentucky National Insurance Company.

Angela S. Cash, R. Jay Taylor Jr., Scopelitis, Garvin, Light, Hanson & Feary, Indianapolis, IN, Attorneys for Appellee and Cross–Appellant Empire Fire and Marine Insurance Co.

David L. Sage, Hummel Coan Miller & Sage, Louisville, KY, Attorney for Appellee and Cross–Appellee Alpha Leasing Co., Inc.

Garret B. Hannegan, Morgan & Pottinger, P.S.C., Louisville, KY, Attorney for Appellees Huntington National Bank and Huntington LT.

## OPINION

BROWN, Judge.

Kentucky National Insurance Company ("Kentucky National") appeals the trial court's denial of its motion for summary judgment and partial grant of summary judgment in favor of Empire Fire and Marine Insurance Co. ("Empire Fire"), Alpha Leasing Co., Inc. ("Alpha Leasing"),

Todd Royse, Bill Ward, and Huntington National Bank and Huntington LT (together, "Huntington"). Kentucky National raises four issues, which we consolidate and restate as whether the trial court erred in denying its motion for summary judgment and granting partial summary judgment to Empire Fire and Alpha Leasing. On cross-appeal, Empire Fire raises two issues, which we consolidate and restate as whether the trial court erred by denying in part its motion for summary judgment. We affirm in part, reverse in part, and remand.[1]

The relevant facts follow. Alpha Leasing, a Kentucky corporation, is a company which is engaged in the business of arranging and making leases of motor vehicles.[2] In December 1997, Alpha Leasing and Huntington entered into an Operating Agreement. The Operating Agreement set forth the terms under which Huntington acquired motor vehicles from Alpha Leasing for the purpose of leasing the vehicles to individuals or business entities. According to the Operating Agreement, written motor vehicle leases would be entered into by Huntington as lessor and the individual customers as lessees. Alpha Leasing was authorized to enter into the vehicle leases on behalf of Huntington. Alpha Leasing was required to procure and deliver to the lessees any vehicles to be leased, and Alpha Leasing was required to obtain all available warranties and guarantees applicable to the vehicles. Under Section II.C. of the Operating Agreement, Alpha Leasing was required to cause the motor vehicles to be registered, licensed, and titled solely in Huntington's name. Pursuant to Section II.D., Alpha Leasing was required, prior to delivery of a vehicle to a lessee, to verify that the lessee had insurance in effect for the motor vehicle. Alpha Leasing was also required to notify Huntington of any loss or damage sustained by the motor vehicle. Pursuant to Section K of the Operating Agreement, Alpha Leasing had the sole responsibility for the condition and performance of all leased vehicles, any actions or omissions in connection with the leases, any failure to deliver the vehicle or to perform services, and any failure to sell or dispose of any trade-in or any failure to pay in full the prior financing obligation on the trade-in.

Huntington also had a vehicle return policy pertaining to the vehicles leased pursuant to the Operating Agreement and arranged by Alpha Leasing. The return policy stated: "Alpha Leasing may only return vehicles on behalf of the lessee, as outlined in the provisions below, provided the lease has reached maturity. This policy does not apply to vehicles being returned by lessees prior to lease maturity." Appellant's Supplemental Appendix at 73;

1. We note that Kentucky National did not include a statement of issues or a statement of case in its appellant's brief. We remind Kentucky National that Ind. Appellate Rule 46(A)(3) and (5) require that the appellant's brief shall contain a statement of issues and a statement of case under separate headings and that the statement of case "shall briefly describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court...." We also note that Kentucky National did not include the applicable standard of review in its appellant's brief which is required by Ind. Appellate Rule 46(A)(8)(b) ("The argument must include for each issue a concise statement of the applicable standard of review; this statement may appear in the discussion of each issue or under a separate heading placed before the discussion of the issues."). We remind counsel for Kentucky National of their professional obligation to follow the appellate rules.

2. The record reveals that Alpha Leasing arranged leases for vehicles which were titled in its name and for vehicles which were titled to other lessors.

Appellant's Appendix at 181. The policy permitted Alpha Leasing to pick up a vehicle from a lessee, obtain documentation,[3] and return the vehicle by appointment to Huntington's designated return location. The policy provided: "Alpha Leasing will be responsible for ensuring the vehicle is returned within (5) business days of pick up and that adequate insurance coverage is carried to cover the care and custody of the vehicle while in their possession." Appellant's Supplemental Appendix at 73; Appellant's Appendix at 181. As part of its business operations, Alpha Leasing would transport vehicles leased pursuant to its Operating Agreement with Huntington from the individual lessee to the auto auction site designated by Huntington. Huntington also maintained inspection procedures which set forth the return center for each of Huntington's operating areas.[4] Huntington's return center for its Louisville, Kentucky operating area was the Louisville Auto Auction.

Two commercial insurance policies were issued to Alpha Leasing covering July 2004. First, Kentucky National issued a Commercial Auto Policy (the "Kentucky Policy") to Alpha Leasing.[5] Second, Empire Fire issued a Business Auto Policy (the "Empire Policy") to Alpha Leasing.

In March 1998, Alpha Leasing facilitated a lease between Huntington and Ronald Carney.[6] Pursuant to a vehicle lease agreement arranged by Alpha Leasing, Huntington leased a Toyota Celica (the "Vehicle") to Carney. As required by the Operating Agreement between Alpha Leasing and Huntington, the Vehicle was titled to and registered in the name of Huntington.

On July 31, 2001, Carney executed a second lease agreement extending the Vehicle's lease for an additional three years. Section 14 of the lease shows that Alpha Leasing, as required by its Operating Agreement with Huntington, verified that Carney obtained insurance coverage for the vehicle during the term of the lease. Section 18 of the Vehicle's lease required Carney to maintain insurance coverage until he returned the vehicle. Pursuant to Section 24 of the lease, Carney was permitted to terminate the lease prior to its scheduled expiration/maturity provided he was not in default at the time of such termination. If Carney terminated the lease prior to its scheduled expiration/ma-

3. The documentation required by the vehicle return policy included an odometer statement and a vehicle return waiver signed by the lessee. The documentation was to be retained in Alpha Leasing's records.

4. It does not appear that Huntington's inspection procedures were included in the designated evidence.

5. In support of its motion for summary judgment, it appears that Kentucky National only cited to certain portions of the Kentucky Policy: page 9, Section 1, Symbol 9; page 15, and pages 19–37. The response of Huntington to the summary judgment motions of Empire Fire, Kentucky National, Alpha Leasing, and Ward included an attachment of the first two pages of the Kentucky Policy, which consisted of the Declarations pages describing the three types of autos covered by the Ken-

tucky Policy. In support of its motion for summary judgment, Empire National designated the entirety of the Kentucky Policy. Also, in support of its motion for summary judgment, which was incorporated by reference in Alpha Leasing's response to Empire Fire's summary judgment motion, Alpha Leasing designated the entirety of the Kentucky Policy.

6. The original 1998 vehicle lease does not appear to be included in the designated evidence in support of Kentucky National's summary judgment motion or Empire Fire's summary judgment motion. A copy of the 1998 vehicle lease was designated by Alpha Leasing in support of its motion for summary judgment.

turity, he would be required to pay an early termination fee. For purposes of determining the early termination fee, the lease would be considered terminated during the month during which Huntington obtained possession of the Vehicle through repossession or return, or Huntington received the proceeds of the insurance Carney obtained to cover the Vehicle if the Vehicle were to become a total loss due to collision, destruction or theft.[7]

In December 2003, prior to the scheduled expiration/maturity of the lease term for the Vehicle, Carney returned the Vehicle to Bill Ward, a sales agent with Alpha Leasing, and leased a new vehicle through Alpha Leasing.[8] Alpha Leasing attempted to sell the Vehicle and made the lease payments until the scheduled lease expiration/maturity.

On July 13, 2004, during the last month of the Vehicle's lease term, Alpha Leasing hired Todd Royse[9] to drive the Vehicle from Alpha Leasing's office located in Louisville, Kentucky, to the Louisville Auto Auction located at 5425 Highway 32E, Clarksville, Indiana. Later that day, the Vehicle, driven by Royse, was involved in an automobile accident in southern Indiana with a vehicle driven by Julie Speakes.[10] On May 23, 2006, Speakes filed a lawsuit against Royse and Alpha Leasing under Cause No. 22C–01–0605–CT–316 (the "Speakes Lawsuit").

At some point, Alpha Leasing or its insurance agent notified Empire Fire of the accident involving the Vehicle, and Empire Fire sent a payment by check to Speakes for property damage to her vehicle. However, Speakes did not cash the check, but returned it to Empire Fire.[11] Empire Fire also sent a check to Speakes for reimbursement of her insurance deductible and her rental car expense incurred as a result of the accident, and Speakes cashed that check.[12]

7. The vehicle lease also stated that Carney was required by law to complete a statement of the Vehicle's mileage and that failure to complete an odometer disclosure statement or making a false statement therein may result in fines and imprisonment.

8. The record and designated evidence do not appear to contain a signed vehicle return waiver. Ward testified at his deposition that he could not recall whether Carney signed a vehicle return waiver or if Alpha Leasing required Carney to sign a vehicle return waiver. Ward also testified that he could not recall whether or not he discussed with Carney the termination fee under the lease of the Vehicle.

9. Royse "worked for himself" in the automobile industry. Appellee's Supplemental Appendix at 221. Royse could pick up and deliver vehicles, perform work on vehicle brakes and air conditioners, complete tune-ups and oil changes, and detail, wash, vacuum, and clean vehicles.

10. In a written statement, Royse stated that he "was driving thru [sic] a trafic [sic] light that [he] thought was green." Appellant's Supplemental Appendix at 76. According to the police report regarding the accident, Royse stated that he "thought he had a green light when entering the intersection" which resulted in the collision, Speakes stated that "[Royse] ran the red light and hit her," and a witness to the accident who was in a vehicle behind Royse's vehicle observed Royse "run the red light and hit [Speakes]." Id. at 22.

During his deposition, Ward testified that he had a discussion with Royse about a year after the accident and that "Mr. Royse said he had an errand to run in Indiana to pick up some air conditioner equipment." Appellant's Supplemental Appendix at 96.

11. According to Speakes's response to requests for admissions, Speakes's insurer, State Farm Insurance Companies, paid for the property damage to her vehicle.

12. It does not appear that the payments made by check by Empire Fire to Speakes were included in the record or the designated evidence. Also, Speakes's responses to requests for admissions revealing that Empire Fire

On March 9, 2005, Alpha Leasing sent an automobile loss notice to Kentucky National regarding the accident involving the Vehicle. The automobile loss notice stated that "[Empire Fire] is claiming that they are not liable for this claim." Appellant's Appendix at 159; Appellant's Supplemental Appendix at 75. On March 23, 2006, Empire Fire sent a letter to Kentucky National stating that the coverage provided by the Empire Policy was excess/contingent and requested Kentucky National to advise as to whether the Kentucky Policy provided coverage for Alpha Leasing. On May 30, 2006, Alpha Leasing sent a letter by its attorney to Kentucky National together with a copy of the complaint and related documents with respect to the Speakes Lawsuit. On June 6, 2006, Kentucky National responded to Alpha Leasing by letter and stated that Kentucky National acknowledged no obligation to defend and indemnify Alpha Leasing because the Vehicle was not an insured vehicle under the Kentucky Policy and because Kentucky National did not receive timely notice of Alpha Leasing's claim.[13]

In August 2006, Empire Fire filed a lawsuit under Cause No. 22C–01–0608–MR–518, the case from which this appeal arises, against Kentucky National, Alpha Leasing, Royse, and Speakes, requesting the court for declaratory relief related to the insurance coverage provided by the Empire Policy in connection with the accident between Royse and Speakes. In September 2006, Kentucky National filed an answer, counterclaim and cross-claim asking the court for declaratory relief related to the insurance coverage provided by the Kentucky Policy in connection with the accident. In November 2006, Kentucky National filed a third party complaint against Huntington National Bank. In February 2007, Huntington National Bank filed a motion to dismiss Kentucky National's third party complaint, which was denied. In July 2007, Huntington National Bank filed an answer, counterclaim against Kentucky National, cross-claims against Empire Fire, Alpha Leasing and Royse, and third party complaints against Ward and Carney. Also in July 2007, Kentucky National added Huntington LT and filed a third party complaint against Huntington LT requesting declaratory relief and alleging that Huntington was self-insured or financially responsible for the operation of the Vehicle. In September 2007, Huntington LT filed an answer, counterclaim

sent payment of some amount to Speakes, while included in the appellant's appendix, do not appear to have been designated by Kentucky National in support of its motion for summary judgment. Speakes's responses to requests for admissions were attached to Kentucky National's response to Empire Fire's motion for summary judgment.

13. According to Kentucky National's letter, in response to Alpha Leasing's notice of loss dated March 9, 2005, Kentucky National sent faxes to Alpha Leasing's insurance agent on May 25 and 26, 2005, requesting some specific information, including information regarding the reason the accident was not reported to Kentucky National earlier, "an explanation of who Todd Royse was," a "copy of the [Vehicle's] lease," information regarding "what charges were filed against Mr. Royse,"

and "the portion of the policy that he felt would afford coverage for this accident." See Appellee's Appendix at 32. Also according to Kentucky National's letter, Alpha Leasing's insurance agent responded to Kentucky National's request for specific information by stating that he could not obtain the information requested and again requesting that Kentucky National assign a field investigator to the claim. It does not appear that Empire Fire's letter on March 23, 2006, Alpha Leasing's letter on May 30, 2006, or Kentucky National's letter on June 6, 2006, were included in the evidence cited by Kentucky National in support of its summary judgment motion. However, the letters were apparently attached to Alpha Leasing's response to Kentucky's summary judgment motion, and only the March 23, 2006, letter was referenced in the response filing.

against Kentucky National, crossclaims against Empire Fire, Alpha Leasing, and Royse, and third party complaints against Ward and Carney. In October 2007, the court ordered mediation. The case did not settle at mediation.

On November 13, 2007, Empire Fire filed a motion for summary judgment seeking a determination that the Empire Policy did not provide coverage for the Vehicle, that Empire Fire did not waive and is not estopped from raising defenses to coverage under the Empire Policy, and that Empire Fire's coverage under the Empire Policy was secondary or excess to any coverage provided by Kentucky National. On January 18, 2008, Kentucky National filed a motion for summary judgment seeking a determination that it did "not owe insurance coverage to [Alpha Leasing] and Royse...." Appellee's Appendix at 168–169.[14] Also on January 18, 2008, Alpha Leasing, Ward, and Huntington filed separate motions for summary judgment.[15] In its memorandum in support of its motion, Alpha Leasing argued that the Vehicle was covered under the Empire Policy and the Kentucky Policy.

On January 23, 2008, Huntington filed a second motion for summary judgment against Alpha Leasing and Ward.[16] The parties also filed a number of response and reply briefs opposing the various motions for summary judgment. In response filings on February 19, 2008, and March 3, 2008, Kentucky National argued among other things that Alpha Leasing was entitled to summary judgment on the grounds that it was not vicariously responsible for Royse's acts.

On March 3, 2008, the trial court heard argument on all of the pending motions. In April 2008, the trial court issued an entry in the court's chronological case summary granting partial summary judgment in favor of Empire Fire and Alpha Leasing. The trial court held a hearing on July 24, 2008, to address various concerns

14. We note that Kentucky National did not submit a separate designation of evidence. In *Filip v. Block*, the Indiana Supreme Court held that a party's designation of evidence may be placed in a motion for summary judgment, a memorandum supporting or opposing the motion, a separate filing identifying itself as the designation of evidence, or an appendix to the motion or memorandum. 879 N.E.2d 1076, 1081 (Ind.2008), *reh'g denied*. However, the Court also emphasized that "[t]he only requirement as to placement is that the designation clearly identify listed materials as designated evidence in support of or opposition to the motion for summary judgment." *Id.* Also, "[i]f the designation is not in the motion itself, it must be in a paper filed with the motion, and the motion should recite where the designation of evidence is to be found in the accompanying papers." *Id.* at 1081. Here, Kentucky National's motion for summary judgment did not "recite where the designation of evidence is to be found in the accompanying papers." *Id.* Nor did Kentucky National's memorandum in support of its motion recite where the designation of evidence is to be found. We remind Kentucky National's counsel that the Indiana Supreme Court has held that "the courts and opposing parties should not be required to flip from one document to another to identify the evidence a party claims is relevant to its motion." *Id.* "Rather, the entire designation must be in a single place, whether as a separate document or appendix or as a part of a motion or other filing." *Id.*

15. The record includes Alpha Leasing's motion for summary judgment, accompanying memorandum, and attached designation of evidence. The motions for summary judgment filed by Ward and Huntington do not appear to be included in the record.

16. The appellant's appendix includes an excerpt from Huntington's memorandum in support of its motion for summary judgment against Alpha Leasing and Ward. From the excerpt provided, it appears that Huntington argued that it was entitled to recover any damages it incurred in connection with the accident from Alpha Leasing upon the bases of conversion and negligence.

of the parties regarding the effect of the April 2008 ruling, and the court held a status conference on September 12, 2008.

On September 22, 2008, the trial court entered a partial order of summary judgment regarding the issues raised by the parties in their summary judgment motions. In its order, the trial court found the following: (1) the Empire Policy provided coverage for the accident; (2) the Kentucky Policy provided coverage for the accident; (3) Royse was preliminarily entitled to a defense in the Speakes Lawsuit under both the Kentucky Policy and the Empire Policy; (4) Empire Fire did not waive its non-coverage defense by making partial payments of claims related to the accident; (5) the coverage provided by the Empire Policy was secondary to and in excess of the primary coverage provided by the Kentucky Policy; and (6) Kentucky National bears the primary burden to defend Alpha Leasing and Royse in the Speakes Lawsuit and Empire Fire shall continue to provide a defense to Alpha Leasing and Royse. The trial court denied summary judgment on all other issues raised by the parties in their various summary judgment motions.

Both Kentucky National and Empire Fire appeal the trial court's order. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its

day in court. *Id.* at 974. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991).

A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 975 (Ind.2005). If the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion. *Id.* In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox County*, 779 N.E.2d 1, 3 (Ind.2002).

■ The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App.1997), *trans. denied.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

■ Before we address the arguments of Kentucky National and Empire

Fire, we note that the law of Kentucky applies to this case. Choosing the appropriate state substantive law is a decision to be made by the court of the state in which the action is pending. *Travelers Ins. Co. v. Rogers*, 579 N.E.2d 1328, 1330 (Ind.Ct. App.1991) (citing *Hubbard Manufacturing Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987); *see also Alli v. Eli Lilly and Co.*, 854 N.E.2d 372, 376 (Ind.Ct.App. 2006). Accordingly, Indiana's choice of law rules apply to this case. Indiana choice-of-law provisions generally favor contractual stipulations as to governing law. *See Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind.2002).

■ Indiana's choice of law rule for contract actions, including actions based upon insurance contracts, is the "most intimate contacts" test. *Schaffert by Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 232 (Ind.Ct.App.1997) (citations omitted), *trans. denied*. The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App.1997) (citing *W.H. Barber Co. v. Hughes*, 223 Ind. 570, 63 N.E.2d 417, 423 (1945)), *trans. denied*. The following are representative of the factors to consider: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties. *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1024 (Ind. Ct.App.1999) (citing *Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623, 626 (Ind. Ct.App.1983) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971))), *reh'g*

*denied, trans. denied*. The location of the subject matter of the contract, also known as the principal location of the insured risk, is given greater weight than any other single contact in determining the state of the applicable law when that risk can be located principally in a single state. *Id.* at 1024–1025. It is also accorded greater significance when the other factors do not point primarily to one forum. *Id.* at 1025. The Indiana Supreme Court has also stated that "[a]n insurance policy is governed by the law of the principal location of the insured risk during the term of the policy." *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind.2005).

■ However, a court need only undergo the analysis above if there is a difference between the relevant laws of the different states. *Hartford Acc. & Indem. Co.*, 690 N.E.2d at 291 ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.") (citing *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir.1992). *cert. denied*, 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992)). "If the purposes and policies of two potential rules are the same, the forum should apply the forum law." *Id.; see also Simon v. U.S.*, 805 N.E.2d 798, 805 (Ind.2004) (noting that because there was a conflict between the laws of Indiana and Pennsylvania that was "important enough to affect the outcome of the litigation," the Court needed to determine which State's law to apply). In addition, the Indiana Supreme Court has held that Indiana does not engage in *dépeçage*, which is "the process of analyzing different issues within the same case separately under the laws of different states." *Simon*, 805 N.E.2d at 801. "Although Indiana allows different claims to be analyzed separately, it does not allow issues within

those counts to be analyzed separately." *Id.* ("For example, an Indiana court might analyze a contract claim and a tort claim independently but would not separately analyze and apply the law of different jurisdictions to issues within each claim.").

Here, we conclude that there are differences between the relevant laws of Indiana and Kentucky that may affect the outcome of the litigation in this case. Specifically, as discussed in detail in Section I.B.2. of this opinion, Kentucky law differs from Indiana law with respect to whether late notice, given to an insurer by an insured, of a claim under an insurance policy that requires prompt notice is presumptively prejudicial to the insurer. *Compare Tri–Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1005 (Ind.2009) (observing that, under Indiana law, late notice is presumptively prejudicial to an insurer), *reh'g denied; with Jones v. Bituminous Cas. Co.*, 821 S.W.2d 798, 803 (Ky.1991) (observing that, under Kentucky law, "the burden is on the insurance carrier to prove there was in fact some substantial prejudice caused by the delay in reporting the occurrence"). Also, as discussed in Section II.D. of this opinion, Kentucky law differs from Indiana law in the context of this case with respect to the priority of the coverage provided by two insurance policies where both policies contain excess coverage provisions.

Because there is a difference between the relevant laws of Indiana and Kentucky that may affect the outcome of the litigation in this case, we apply the "most intimate contacts" test as set forth above. *See Schaffert by Schaffert*, 687 N.E.2d at 232. The designated evidence reveals that the insured Alpha Leasing was a Kentucky corporation, Alpha Leasing's offices were located in Kentucky, Alpha Leasing issued checks from its Kentucky location, and Alpha Leasing had operations in Ken-

tucky. Also, endorsements entitled "Kentucky Changes" were added to both the Kentucky Policy and the Empire Policy. Further, Alpha Leasing's application for insurance included a "GEOGRAPHIC BREAKDOWN" showing sixty vehicles in Kentucky, two vehicles in Indiana, one vehicle in Florida, and one vehicle in Pennsylvania. It appears that the only contacts occurring outside the State of Kentucky were the place of the accident, the small number of vehicles located in other states at the time of contracting, including two vehicles in Indiana, and the location of the Huntington's vehicle return location. Although the automobile accident which provided the motivation for the declaratory action in this case occurred in the State of Indiana, we conclude that the principal location of the insured risk with respect to the declaratory action based upon the insurance contracts at issue was in the State of Kentucky. While the record is not clear on the place of negotiation, we conclude based upon the designated evidence contained in the record, and especially in light of the fact that this court has explained that the most important factor is the principal location of the insured risk (in this case, Alpha Leasing's various vehicles), that Kentucky is the "state with which the facts are in most intimate contact." *See Hartford Acc. & Indem. Co.*, 690 N.E.2d at 291. *See also State Farm Mut. Auto. Ins. Co. v. Conway*, 779 F.Supp. 963, 967 (S.D. 1991) (noting that the only contact occurring outside of the State of Indiana was the place of the accident); *Employers Ins.*, 716 N.E.2d at 1024 (explaining that the place of performance bears little weight on the choice of law determination where the place of performance is uncertain or unknown at the time of contracting). Accordingly, Kentucky law applies in this case. *See Bedle v. Kowars*, 796 N.E.2d 300, 303 (Ind.Ct.App.2003) (applying the substantive law of Ohio after finding that

Ohio had the most intimate contacts to the litigation); *Schaffert*, 687 N.E.2d at 234 (applying the "most intimate contacts" test and concluding that Illinois substantive law was applicable); *OVRS Acquisition Corp. v. Cmty. Health Services, Inc.*, 657 N.E.2d 117, 124 (Ind.Ct.App.1995) (applying Indiana's most intimate contacts choice of law rule and finding that Kentucky substantive law was applicable because it had the most intimate contacts to the litigation where the defendant was a Kentucky corporation, the plaintiff had its principal place of business in Kentucky, and the contract was signed in Kentucky), *reh'g denied, trans. denied; see also Simon*, 805 N.E.2d at 805 (determining which state's law applied where there was a conflict between the states' laws important enough to affect the outcome of the litigation). Further, we apply Kentucky law to every issue raised with respect to the insurance coverage claims in this case. *See Simon*, 805 N.E.2d at 801 (holding that Indiana does not engage in "the process of analyzing different issues within the same case separately under the laws of different states").

Initially, we review Kentucky law regarding the interpretation of insurance policies. We observe that under Kentucky law an "insurance policy is a contract." *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 631 n. 11 (Ky.2005) (citation omitted); *Aetna Cas. & Sur. Co. v. Com.*, 179 S.W.3d 830, 857 (Ky.2005). The interpretation and construction of a contract is a matter of law for the courts to decide and is subject to *de novo* review. *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 174

S.W.3d 440, 448 (Ky.2005), *reh'g denied.* Terms used within insurance contracts should be given their ordinary meaning as persons with the ordinary and usual understanding would construe them. *Sutton v. Shelter Mutual Insurance Co.*, 971 S.W.2d 807, 808 (Ky.Ct.App.1997), *reh'g denied.* In construing an insurance policy, the policy shall be read as a whole. *Fidelity & Cas. Co. of New York v. Cooper*, 137 Ky. 544, 126 S.W. 111, 113 (1910); *Sun Life Ins. Co. v. Taylor*, 108 Ky. 408, 56 S.W. 668 (1900).[17] Exclusions shall be strictly construed to make insurance effective. *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 904 (Ky.Ct.App.1994). Furthermore, it is a fundamental rule in the construction of insurance policy contracts that the contract shall be liberally construed and any doubts resolved in favor of the insured. *State Farm Mut. Auto. Ins. Co. v. Shelton*, 413 S.W.2d 344, 347 (Ky. 1967). An ambiguous contract is one capable of more than one different, reasonable interpretation. *Cent. Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky.1981).

Furthermore, "[i]n the field of insurance law recognition frequently has been given to the principle that an insurance company may not rely upon a noncompliance by the insured with a condition of the policy if the company has sustained no prejudice by reason of the noncompliance." *Newark Ins. Co. v. Ezell*, 520 S.W.2d 318, 321 (Ky.1975).

We turn now to the issues raised by Kentucky National and Empire Fire.

## I.

The first issue raised on appeal is whether the trial court erred in ruling on

---

**17.** We note that prior to 1976, the Kentucky Court of Appeals was the highest court in Kentucky. As a result of constitutional amendments which became effective in 1976, the Kentucky Supreme Court became the highest court in Kentucky and the Kentucky Court of Appeals became an intermediate appellate court. *See* K.Y. Const. of 1891, §§ 109–124, as amended by 1974 Ky. Acts. Ch. 84, §§ 1–3 (effective Jan. 1, 1976).

the summary judgment motions of Kentucky National and Alpha Leasing. Kentucky National appears to argue that the trial court erred in denying its motion for summary judgment because: (A) the Kentucky Policy did not cover the Vehicle; (B) Alpha Leasing failed to comply with terms of the Kentucky Policy; and (C) Alpha Leasing concealed or misrepresented material facts. We address each argument separately.

## A. *Coverage of the Vehicle under the Kentucky Policy*

▬▬ Kentucky National argues that the trial court erred in denying its motion for summary judgment and Alpha Leasing's motion for summary judgment regarding coverage of the Vehicle under the Kentucky Policy.

The Kentucky Policy provided that Kentucky National "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Appellant's Supplemental Appendix at 10. The Declarations page of the Kentucky Policy indicated that Alpha Leasing purchased liability insurance for covered autos described in Symbols 7, 8, and 9. Section I of the Kentucky Policy, entitled "COVERED AUTOS," provided in relevant part:

The following numerical symbols describe the "autos" that may be covered "autos." The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos."

## A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS

SYMBOL DESCRIPTION

\* \* \* \* \*

7 = SPECIFICALLY DESCRIBED "AUTOS." Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM THREE).

8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households.

9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

Appellant's Supplemental Appendix at 33. Section I of the Kentucky Policy also provided that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." *Id.* The Named Insured in the Declarations was Alpha Leasing. *Id.* at 25. The trial court found that the Vehicle was "a covered auto under Kentucky National's Policy as a Hired Auto under Symbol 8 of the Policy Declaration." Appellant's App. at 26.

Kentucky National argues that the Vehicle was not covered under Symbol 8 because the evidence does not show that the Vehicle was leased, borrowed, or rented by Alpha Leasing. With respect to its argument that Alpha Leasing did not "lease" the Vehicle under Symbol 8, Kentucky National argues that "Alpha was neither the 'Lessee' nor the 'Lessor' under the existing lease agreement . . . ." Appellant's Brief at 17. Kentucky National further argues that if Alpha Leasing had borrowed the Vehicle from Carney for the purpose of returning it to Huntington, Alpha Leasing was no longer borrowing the Vehicle at the time of the accident because it "kept the Vehicle longer than the five (5) days authorized under Carney's lease." *Id.* Kentucky National also appears to argue that

Symbol 9 does not cover the Vehicle because "there is a fact question as to whether, at the time of the Accident, Royse was using the Vehicle in connection with Alpha's business." *See id.* at 18.

Empire Fire argues that "Alpha Leasing had temporary possession of the Vehicle, and the right to exercise control over the Vehicle, following Carney's return of the Vehicle, and pursuant to the Operating Agreement with [Huntington], which expressly delegated responsibility for the Vehicle to Alpha Leasing." Appellee/Cross–Appellant Empire Fire's Brief at 27. Huntington argues that the Vehicle "was a covered auto under either Symbol 8 or Symbol 9." Appellee Huntington's Brief at 11. Alpha Leasing argues that the Vehicle was a covered auto under either Symbol 8 or Symbol 9 and that Kentucky National failed to show that "Alpha Leasing's connection with this vehicle [is anything] other than as part of its business as a leasing broker." Appellee Alpha Leasing's Brief at 18.

Alpha Leasing purchased liability coverage for vehicles that would be covered under the terms of either Symbol 8 or Symbol 9 of Section I.A. of the Kentucky Policy. Symbol 8, the "hired autos" provision, provided coverage for vehicles which Alpha Leasing "lease[d], hire[d], rent[ed] or borrow[ed]." Appellant's Supplemental Appendix at 33. Terms used within insurance contracts should be given their ordinary meaning as persons with the ordinary and usual understanding would construe them. *See Sutton,* 971 S.W.2d at 808. The term "borrow" has been defined as: "To obtain or receive (something) on loan with the promise or understanding of returning it or its equivalent." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 214 (4th ed.2006). *See Vinson v. Gobrecht,* 560 S.W.2d 242, 243 (Ky.Ct. App.1977) (noting that the appellant/bailee

borrowed an automobile from the appellee/bailor); *see also Payne v. Terry,* 367 S.W.2d 277, 279 (Ky.1963) (referring to a dictionary for the definition of the term "borrow" as used in another context).

Here, Alpha Leasing did "borrow" the Vehicle given the ordinary meaning of that term. In December 2003, prior to the scheduled expiration/maturity of the lease term for the Vehicle, Carney returned the Vehicle to Ward at Alpha Leasing, and Carney leased a new vehicle through Ward at Alpha Leasing. Carney, who had leased vehicles through Ward and Alpha Leasing on previous occasions, testified that he and Ward "would just swap cars there, sign the papers on the new car, and that would be it." Appellant's Appendix at 101. Carney also testified that Ward "delivers cars, takes cars away, paperwork is simple, it's in order, ready to go; we move on." *Id.* at 102. Under the Operating Agreement, Alpha Leasing was "engaged in the business of arranging and making leases of motor vehicles available to the public." Appellant's Supplemental Appendix at 68; Appellant's Appendix at 176. Alpha Leasing was required, prior to delivery of a vehicle to a lessee, to verify that the lessee had in effect insurance for the motor vehicle. Alpha Leasing was solely responsible for the condition and performance of all vehicles and for the sale, disposal, or trade-in of any vehicle. Thus, the Operating Agreement contemplated that Alpha Leasing would have temporary possession of vehicles leased pursuant to its terms both prior to the delivery of the vehicles to lessees and perhaps after lessees returned the vehicles to Alpha Leasing for ultimate delivery to one of Huntington's auction locations.

Similarly, under Huntington's vehicle return waiver, Alpha Leasing was authorized to pick up a vehicle from a lessee and return the vehicle by appointment to one

of Huntington's auction locations. The return policy also stated that "Alpha Leasing may only return vehicles on behalf of the lessee ... provided the lease has reached maturity. This policy does not apply to vehicles being returned by lessees prior to lease maturity." Appellant's Appendix at 181.[18] Thus, under the provisions of Huntington's vehicle return policy, it appears that Alpha Leasing was not required to return a vehicle to Huntington if the lease for that vehicle had not yet reached maturity. The return policy required Alpha Leasing to carry adequate insurance coverage for the care and custody of any vehicle while in its possession. Thus, Huntington's vehicle return policy contemplated that Alpha Leasing may have temporary possession of vehicles leased pursuant to the terms of the Operating Agreement, including after lessees returned the vehicles to Alpha Leasing either at or before the maturity of the vehicle leases. Under the circumstances, we conclude that the language in Symbol 8 of the Kentucky Policy covering "those 'autos' you ... borrow" included the Vehicle at the time of the accident.

 In addition, the phrase "you lease" in Symbol 8 was capable of more than one reasonable interpretation. The phrase "you lease" could reasonably be interpreted, as Kentucky National argues, to include only those vehicles which were leased pursuant to a lease agreement under which Alpha Leasing was the named lessor. However, on the other hand, under the circumstances the phrase may also be reasonably interpreted to include those vehicles for which Alpha Leasing arranged leases pursuant to its Operating Agreement with Huntington. *See* Appellant's Appendix at 176–177 (Operating Agreement provided that Alpha Leasing was "engaged in the business of arranging and making leases of motor vehicles available to the public" and that Alpha Leasing "entered into [lease agreements] on behalf of Huntington ... in accordance with the provisions of this Agreement."); Appellant's Appendix at 43, 48 (the vehicle's lease was signed by Robert Leidgen, the owner of Alpha Leasing, on behalf of Alpha Leasing and Huntington). Because the language in Symbol 8 of the Kentucky Policy covering "those 'autos' you lease" was "capable of more than one different, reasonable interpretation," *Central Bank & Trust Co.,* 617 S.W.2d at 33, the language was ambiguous, and we must liberally construe the policy and resolve any doubts in favor of Alpha Leasing as the insured. *State Farm Mut. Auto. Ins. Co.,* 413 S.W.2d at 347. Thus, Symbol 8 of the Kentucky Policy also covered the Vehicle

---

18. Kentucky National argues that Alpha Leasing was no longer borrowing the Vehicle at the time of the accident because it "kept the Vehicle longer than the five (5) days authorized under Carney's lease." Appellant's Brief at 17. However, the record does not show that Carney authorized Alpha Leasing to possess the Vehicle for only five days under the terms of the Vehicle's lease or otherwise limited Alpha Leasing's possession of the Vehicle when he returned the Vehicle. The five-day rule referred to by Kentucky National was found in Huntington's vehicle return policy, which stated that "Alpha Leasing will be responsible for ensuring the vehicle is returned within (5) business days of pick up and that adequate insurance coverage is carried to cover the care and custody of the vehicle while in their possession." Appellant's Supplemental Appendix at 73; Appellant's Appendix at 181. However, the return policy also stated: "Alpha Leasing may only return vehicles on behalf of the lessee, as outlined in the provisions below, provided the lease has reached maturity. This policy does not apply to vehicles being returned by lessees prior to lease maturity." *Id.* Kentucky National does not point to evidence that Alpha Leasing was in possession of the Vehicle without the permission of either Carney or Huntington after Carney returned the Vehicle to Alpha Leasing and at the time of the accident.

as one of "those 'autos' [Alpha Leasing] lease[d]."

We conclude that the Vehicle driven by Royse at the time of the accident was a covered auto under Symbol 8 of the Kentucky Policy.[19] The trial court did not err in granting summary judgment to Alpha Leasing on the issue that the Kentucky Policy provided coverage for the Vehicle as a covered auto.

## B. *Failure to Comply with Terms of the Kentucky Policy*

Kentucky National next argues that the trial court erred in denying its motion for summary judgment upon the basis that Alpha Leasing failed to comply with terms of the Kentucky Policy. Specifically, Kentucky National argues that Alpha Leasing and Royse: (1) did not provide Kentucky National with prompt notice of the accident; (2) failed to cooperate with Kentucky National; and (3) failed to permit inspection of the Vehicle and records showing loss.

### 1. *Failure to Provide Notice*

■ Kentucky National argues that Section IV.A.2.a. of the Kentucky Policy "clearly and unambiguously required Alpha to promptly notify Kentucky National of the accident and Speakes' and Alpha's claims. Alpha's untimely notice fails to comply with a condition precedent for coverage." Appellant's Brief at 11. Kentucky National argues that Alpha Leasing's "failure to give Kentucky National reasonably prompt notice of the accident prejudiced Kentucky National's ability to investigate Alpha's claim and to defend this current action (as well as the parallel tort action)." *Id.* at 12. Specifically, Kentucky National appears to argue that it was prejudiced because, had Alpha Leasing given it notice prior to the date that it did, Kentucky National "could have asked [Royse] questions that might have shed light on the coverage issues pertinent to Kentucky National's investigation and evaluation" and could have obtained information from papers and documents that were misplaced and from witnesses whose memories have faded. *Id.*

Alpha Leasing argues Kentucky National "fails to cite to this Court what papers or documents it believes are missing or to explain to this Court how those papers or documents are 'important' to this case." Appellee Alpha Leasing's Brief at 12. In addition, Alpha Leasing argues that "[a]ny alleged notice issues were not initially raised by Kentucky National as causing any prejudice to the company." *Id.* at 11–12. Alpha Leasing also argues that Kentucky National "may not sit on its hands" by not participating in the defense of Alpha Leasing or Royse from March 2005 until September 2008 and "then complain about how the case was defended by others." *Id.* at 14. Empire Fire argues that "Kentucky National failed to designate any evidence to the trial court suggesting that it was prejudiced by the timing of Alpha

---

19. With respect to Symbol 9 of the Kentucky Policy, Empire Fire argues that Kentucky National failed to designate admissible evidence supporting its argument that the Vehicle was not used "in connection with" Alpha Leasing's business at the time of the accident because Ward's testimony that he had a discussion with Royse about a year after the accident and that Royse said that he had an errand to run in Indiana to pick up some air conditioner equipment was inadmissible hear- say. Huntington argues that Ward's testimony was inadmissible hearsay testimony and that the phrase "in connection with" is broad enough to include the Vehicle even if Royse did run an errand on his way to the auto auction. Because we find that the Vehicle was a covered auto under Symbol 8 of the Kentucky Policy, we need not address the parties' arguments regarding whether the Vehicle was covered under Symbol 9 of the Kentucky Policy.

Leasing's notice of the Accident." Appellee/Cross–Appellant Empire Fire's Brief at 30. Huntington adopts the arguments of Alpha Leasing and Empire Fire with respect to the issue of notice.

Section IV.A.2.a. of the Kentucky Policy stated:

> In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
>
> (1) How, when and where the "accident" or "loss" occurred;
>
> (2) The "insured's" name and address; and
>
> (3) To the extent possible, the names and addresses of any injured persons and witnesses.

Appellant's Supplemental Appendix at 39.

■ Initially, we compare the relevant laws of Indiana and Kentucky pertaining to late notice given by an insured to an insurer of a claim under an insurance policy that requires prompt notice. Under Indiana law, a finding of prejudice to the insurer from the insured's violation of a policy provision relieves the insurer from providing coverage under the insurance contract. *Tri–Etch, Inc.,* 909 N.E.2d at 1005. The Indiana Supreme Court recently observed that American jurisdictions fall into three groups on the need to establish prejudice from late notice. *Id.* at 1004. "Some hold that prejudice is irrelevant to enforcement of a late notice defense. Others require an insurer asserting this defense to demonstrate actual prejudice, and a third group creates a rebuttable presumption of prejudice in favor of the insurer." *Id.* at 1004–1005. "Indiana is generally placed in the third category. . . ." *Id.* at 1005; *see also Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1272 (Ind.2009) (noting that Indiana is among the few jurisdictions that employ a presumption of prejudice analysis); Charles

C. Marvel, Annotation, MODERN STATUS OF RULES REQUIRING LIABILITY INSURER TO SHOW PREJUDICE TO ESCAPE LIABILITY BECAUSE OF INSURED'S FAILURE OR DELAY IN GIVING NOTICE OF ACCIDENT OR CLAIM, OR IN FORWARDING SUIT PAPERS, 32 A.L.R.4th 141 § 2 (1984, Supp.2008) (summarizing variations among decisions in different jurisdictions regarding the requirement of prejudice).

■ Thus, under Indiana law, late notice is presumptively prejudicial to an insurer. *See Tri–Etch, Inc.,* 909 N.E.2d at 1005 (citing *Miller v. Dilts,* 463 N.E.2d 257 (Ind.1984)). However, an "injured party can establish some evidence that prejudice did not occur in the particular situation." *Miller,* 463 N.E.2d at 265. "Once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed. The insurance carrier in turn can present evidence in support of its claim of prejudice." *Id.* at 265–266.

Kentucky courts have also considered whether, and under what circumstances, failure to provide prompt notice of loss to an insurance company would defeat the insurer's obligation to provide coverage. *See Jones,* 821 S.W.2d at 801. In *Jones,* the Kentucky Supreme Court held that an insurer may not deny coverage because an insured failed to provide prompt notice of loss unless the insurer can prove that it is reasonably probable that it suffered substantial prejudice from the delay in notice. 821 S.W.2d at 802–803. The court also held that "the burden is on the insurance carrier to prove there was in fact some substantial prejudice caused by the delay in reporting the occurrence." *Id.* at 803. Summary judgment is appropriate on the issue of prejudice only where proof of prejudice is conclusive or there is failure of proof on the subject. *Id; see also Best v. West American Ins. Co.,* 270 S.W.3d 398,

405 (Ky.Ct.App.2008) ("Pursuant to *Jones v. Bituminous Cas. Corp.,* 821 S.W.2d 798, 802 (Ky.1991), an insurer may not deny coverage because the insured failed to provide prompt notice of loss unless the insurer can prove that it is reasonably probable that it suffered substantial prejudice from the delay in notice."), *reh'g denied.*

In this case, if we were to apply Indiana law, there would be a presumption that any late notice given by Alpha Leasing was prejudicial to Kentucky National. *See Tri–Etch, Inc.,* 909 N.E.2d at 1005. However, if Alpha Leasing designated any evidence to the trial court showing that Kentucky National did not suffer prejudice in this particular situation, then the question would become one for the trier of fact. *See Miller,* 463 N.E.2d at 265–266. On the other hand, under Kentucky law, Kentucky National as the insurer bears the burden of proving that it is reasonably probable that it suffered substantial prejudice from the delay in notice. *See Jones,* 821 S.W.2d at 802–803. If Kentucky National failed to designate facts establishing that it suffered such prejudice, then summary judgment is inappropriate. *See id.* at 803. Because there is a difference between the law of Indiana and Kentucky which may affect the outcome of the litigation in this case, we apply the law of the State of Kentucky, as previously discussed, because it is the "state with which the facts are in most intimate contact." *See Hartford Acc. & Indem. Co.,* 690 N.E.2d at 291.

Here, the designated evidence reveals that on July 13, 2004, Todd Royse, who had been hired to drive the Vehicle from Alpha Leasing's office in Louisville, Kentucky, to Huntington's vehicle return location in Clarksville, Indiana, was involved in an automobile accident in southern Indiana with a vehicle driven by Julie Speakes. The designated evidence also shows that on March 9, 2005, Alpha Leasing sent an automobile loss notice to Kentucky National regarding the accident involving the Vehicle. The automobile loss notice stated that "[Empire Fire] is claiming that they are not liable for this claim." Appellant's Appendix at 159; Appellant's Supplemental Appendix at 75. Thus, Alpha Leasing notified Kentucky National of the accident involving the Vehicle almost eight months after the accident occurred.

Our review of the record reveals that Kentucky National did not designate evidence establishing that it suffered prejudice as a result of Alpha Leasing's allegedly late notice of the accident involving the Vehicle.[20] With respect to Kentucky National's argument that Alpha Leasing did not provide it with prompt notice and that such late notice prejudiced its ability to interview witnesses, including Royse, or that witnesses' memories have faded, Kentucky National did not designate evidence establishing that any of the witnesses to the accident were unavailable. According to the police report, which was designated, Speakes was driving the vehicle that was in the collision with the Vehicle driven by Royse. Also, the police report provided the name and contact information for a witness who was behind the Vehicle and observed the collision. Kentucky National does not designate evidence showing that Speakes or the witness who observed the

**20.** We observe that cases in Indiana and Kentucky have indicated that notice given by an insured to an insurer over seven months after an accident occurs may constitute late notice. *See Miller v. Dilts,* 463 N.E.2d 257, 265 (Ind. 1984) (observing that notice given almost seven months after an accident occurred did not constitute timely notice); *Jones v. Bituminous Cas. Corp.,* 821 S.W.2d 798, 800 (Ky.1991) (noting that the trial court determined that notice given to an insurer six and one-half months after the claim arose did not constitute prompt notice).

collision were unavailable or that their memories have faded. In addition, with respect to Royse, Kentucky National includes in its appellant's appendix a copy of requests for admissions which were to be submitted to Royse. However, we observe that Kentucky National did not designate any evidence showing that it submitted its requests for admissions to Royse, that Royse received its requests, or that Royse failed to timely respond to its requests.[21]

With respect to Kentucky National's argument that Alpha Leasing did not provide it with prompt notice and that such late notice prejudiced its ability to obtain documents that may have been misplaced, it does not appear that Kentucky National designated evidence establishing which and how particular documents would have assisted its defense of Alpha Leasing and Royse. In support of its argument that "papers and documents" were misplaced, Kentucky National cites to a portion of Ward's deposition in which Ward is questioned about various documents relating to the Vehicle. However, Ward's testimony set forth in the designated portion of his deposition pertains to particular documents, specifically a vehicle return waiver and an odometer statement, that were to be completed by Alpha Leasing in connection with the return or delivery of the Vehicle to Alpha Leasing by Carney. Completion of those two documents was required by the Operating Agreement and appear to relate to Carney's early termination of the lease of the Vehicle and perhaps to the calculation of possible costs/fees under the Vehicle's lease. The documents do not appear to relate to the accident involving the Vehicle. Kentucky National does not explain, nor can we determine, how a more timely notice of the accident by Alpha Leasing would have preserved those two documents or how those documents would have assisted Kentucky National in its defense of Alpha Leasing or Royse in the Speakes Lawsuit. Based upon our review of the documents we cannot say that it was reasonably probable that Kentucky National suffered "substantial prejudice" by any such delay.[22] *See*

---

21. Apparently Huntington also submitted requests for admissions to Royse. However, no evidence was designated showing that Royse received or failed to respond to those requests for admissions either.

22. We note that the parties discuss correspondence between Empire Fire and Kentucky National dated March 23, 2006, and between an attorney representing Alpha Leasing and Kentucky National dated May 30, 2006, and June 6, 2006, regarding coverage under the Kentucky Policy. However, that correspondence was not designated by Kentucky National. (The letters were attached to Alpha Leasing's response to Kentucky's summary judgment motion, and only the March 23, 2006, letter was referenced in the response filing.)

In its correspondence dated June 6, 2006, Kentucky National stated that it had sent faxes to Alpha Leasing's insurance agent on May 25, 2005, and May 26, 2005, requesting information regarding the reason the accident was not reported to Kentucky National earlier,

"an explanation of who Todd Royse was," a "copy of the lease," information regarding "what charges were filed against Mr. Royse," and "the portion of the policy that he felt would afford coverage for this accident." *See* Appellee's Appendix at 32. Even if the June 6, 2006, letter had been designated, the information contained in the letter does not appear to establish that Alpha Leasing provided notice to Kentucky National prior to March 9, 2005. Nor does the information in the letter appear to establish any facts indicating that Kentucky National did or did not suffer prejudice as a result of receiving notice of the accident involving the Vehicle approximately seven and one-half months after the accident.

Kentucky National also appears to argue that it was prejudiced by the defense initially provided by Empire Fire to Alpha Leasing and Royse. Specifically, Kentucky National states that "[i]nitially, Empire hired two lawyers from the same law firm to represent both [Alpha Leasing] and Royse" and that "[d]espite the obvious conflict of interest ... [,] counsel employed by Empire filed a single

*Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993) (observing that appellate courts are prohibited "from reversing summary judgment orders on the ground that there is a genuine issue of material fact unless the material facts and relevant evidence were *specifically designated* to the trial court."); *Rood v. Mobile Lithotripter of Indiana, Ltd.*, 844 N.E.2d 502, 506 (Ind.Ct.App.2006) ("On appeal, we may not reverse a ruling on summary judgment on the ground that there is a genuine issue of material fact unless the material fact and the relevant evidence have been specifically designated to the trial court").

■ We do acknowledge that Alpha Leasing did not designate evidence establishing that Speakes, Royse, and the witness of the collision who was identified in the police report were available, that their memories have not faded, or that other information contained in documents to be retained by Alpha Leasing was not misplaced. However, under Kentucky law, Kentucky National as the insurer bore the burden of proving that it was reasonably probable that it suffered substantial prejudice from the delay in notice. *See Jones*, 821 S.W.2d at 802–803.

In summary, our review of the record does not reveal designated evidence establishing that Kentucky National suffered substantial prejudice as a result of receiving notice of the accident involving the Vehicle approximately eight months after the accident. As a result, we cannot say

that the trial court erred in denying Kentucky National's motion for summary judgment on this basis. *See, e.g., Jones*, 821 S.W.2d at 803 (reversing the trial court's grant of summary judgment and observing that "[s]ummary judgment is appropriate on the issue of prejudice only where proof of prejudice is conclusive or there is failure of proof on the subject"); *Best*, 270 S.W.3d at 405 (noting that an insurance company failed to cite any evidence showing that it suffered substantial prejudice from a delay in notice from its insured and finding therefore that summary judgment was not warranted).

### 2. *Failure to Cooperate*

■ Kentucky National argues that Alpha Leasing and Royse failed to cooperate with Kentucky National as required by the Kentucky Policy. Specifically, Kentucky National argues that because "[a]llegations have been filed ... claiming that Royse is an 'insured' under Kentucky National's policy ... [,] the 'cooperation' requirement of Kentucky National's policy is in force as to Royse...." Appellant's Brief at 14. Alpha Leasing argues that "Kentucky National has argued throughout this case ... that Alpha Leasing is not responsible for the actions of Mr. Royse.... Kentucky National cannot now lump together Royse and Alpha Leasing as relates to its cooperation clause." Appellee Alpha Leasing's Brief at 14. Alpha Leasing also argues that "Kentucky National is in no position to complain about a lack of cooperation when it has failed to provide a defense in

Answer for both Alpha and Royse alleging (to Alpha's disadvantage) that Royse was an agent of Alpha in one part of the Answer and denying (to Royse's disadvantage) that Royse was not an agent of Alpha." Appellant's Brief at 13. Kentucky National acknowledges that Empire has since provided separate counsel for Alpha Leasing and Royse. Kentucky National fails to develop its argument, cite to authority, or point to any designated evidence

in support of its argument that the conflict of interest, which may have existed when two attorneys who practiced at the same law firm represented Alpha Leasing and Royse, prejudiced Kentucky National. Therefore, this argument is waived. *See Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind.Ct.App.2002) (holding argument waived for failure to cite authority or provide cogent argument), *reh'g denied, trans. denied.*

this matter." *Id.* Empire Fire appears to argue that Kentucky National failed to designate any evidence to the trial court in support of its contention that Alpha Leasing failed to comply with any cooperation requirement in the Kentucky Policy. Huntington adopts the arguments of Alpha Leasing and Empire Fire with respect to the issue of cooperation.

Section IV.A.2.b. of the Kentucky Policy, part of sub-section A entitled Loss Conditions, stated:

Additionally, you and any other involved "insured" must:

＊　　　＊　　　＊　　　＊　　　＊　　　＊

(2) immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit";

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; . . . .

Appellant's Supplemental Appendix at 39.

■ Initially, we note that Kentucky National does not develop a cogent argument or cite to any authority in support of its argument that Alpha Leasing is not entitled to coverage as an insured under the Kentucky Policy even if Royse did or were to fail to cooperate in Kentucky National's defense of him. Therefore, Kentucky National's argument that Alpha Leasing failed to comply with the general cooperation provision of the Kentucky Policy is waived. *See Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind.Ct.App. 2002) (holding argument waived for failure to cite authority or provide cogent argument), *reh'g denied, trans. denied.* Even if Kentucky National did not waive its argument with respect to Alpha Leasing,

we observe that Kentucky National does not point us to any designated evidence showing that Alpha Leasing failed to cooperate with any investigation by or defense provided by Kentucky National.[23] Therefore, the trial court properly denied Kentucky National's motion for summary judgment upon the basis that Alpha Leasing failed to cooperate with Kentucky National.

With respect to Royse, it does not appear that Kentucky National designated evidence establishing that Royse failed to cooperate with any investigation by or defense provided by Kentucky National. As previously mentioned, Kentucky National includes in its appellant's appendix a copy of requests for admissions which were to be submitted to Royse. However, Kentucky National did not designate any evidence showing that it submitted its requests for admissions to Royse, that Royse received its requests, or that Royse failed to timely respond to its requests. Also, no evidence was designated showing that Royse received or failed to respond to requests for admissions submitted by Huntington. Moreover, also as previously mentioned, Kentucky National did not designate evidence establishing that the other witnesses to the accident were unavailable. We also note that the designated police report shows that a witness observed the collision involving Speakes's vehicle and the vehicle driven by Royse. Even if Royse did fail to respond to requests for admissions or failed to participate in this case, Kentucky National did not designate evidence to the trial court showing that such a failure or absence by Royse did or would constitute a substantial violation of the cooperation clause found in the Ken-

---

**23.** We note that the record shows that the Speakes Lawsuit was filed on May 23, 2006, and that Alpha Leasing sent a letter by its attorney to Kentucky National together with a copy of the complaint and related documents with respect to the Speakes Lawsuit on May 30, 2006.

tucky Policy sufficient to void coverage as a matter of law.

Based upon the designated evidence, we cannot say that Kentucky National established that Royse failed to cooperate with any investigation or defense that Kentucky National may have undertaken on his behalf. Nor did Kentucky National designate evidence showing that it suffered any prejudice as a result of Royse's alleged failure to cooperate. As a result, and construing all facts and reasonable inferences drawn from those facts in favor of the nonmovants, we conclude that the trial court properly denied Kentucky National's motion for summary judgment upon the basis that Royse failed to cooperate with Kentucky National. *See Newark Ins. Co.,* 520 S.W.2d at 321 (noting that there was no claim by the insurer that any of the legitimate protective purposes of the policy condition at issue was impaired or that the insurer suffered any prejudice from the alleged noncompliance of the insured); *Western Farm Bureau Mut. Ins. Co. v. Danville Const. Co.,* 463 S.W.2d 125, 128–130 (Ky.1971) (concluding that factual material submitted to the trial court of the insured's failure or refusal to attend a trial or appear as a witness was not sufficient to support a conclusion that there was a substantial violation of the cooperation clause by the insured, and observing that various factors of materiality, diligence on the insurer's part, or the excusability of the absence from the insured's point of view, have rarely been regarded as individually controlling and typically present a question of fact for the jury); *see also Rosi,* 615 N.E.2d at 434 (observing that we may not reverse summary judgment unless the relevant evidence was *"specifically designated* to the trial court."); *Rood,* 844 N.E.2d at 506 (noting that "we may not reverse a ruling on summary judgment on the ground that there is a genuine issue of material fact unless the material fact and

the relevant evidence have been specifically designated to the trial court.").

### 3. *Failure to Permit Inspections*

■ Kentucky National argues that Alpha Leasing failed to permit inspection of the Vehicle and records proving loss as required by the Kentucky Policy. Specifically, Kentucky National argues that it was not notified of the accident before the Vehicle was repaired and "is unable to gather important details regarding the Vehicle and the Accident—such as significant odometer readings, and the 'vehicle return waiver.'" Appellant's Brief at 16. Alpha Leasing argues that the provision in the Kentucky Policy requiring inspection "relates to claims to property damage not personal injury" and that Kentucky National "does not cite this Court to any particular documents which it claims are missing and relevant to the coverage issues in this case." Appellee Alpha Leasing's Brief at 15. Alpha Leasing also argues: "What possible value or difference could the 'post accident' actions of these parties play in the coverage issues with regard to the accident of July 13, 2004? ... What Alpha and Huntington did afterwards with regard to liquidating this vehicle at the auto auction is immaterial." *Id.*

Section IV.A.2.C. of the Kentucky Policy, also part of sub-section A entitled Loss Conditions, stated:

> If there is "loss" to a covered "auto" or its equipment you must also do the following:
>
> \* \* \* \* \* \*
>
> (3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition . . . . .

Appellant's Supplemental Appendix at 39.

The designated evidence cited by Kentucky National in support of its argument

that Alpha Leasing failed to permit it to inspect the Vehicle and records proving loss consists of certain pages of Ward's deposition. Kentucky National first cites to a portion of Ward's deposition in which Ward testified that, after the accident, the Vehicle was repaired at "Mike's Paint and Body." *Id.* at 93. Kentucky then cites to a portion of Ward's deposition in which Ward testified that a person who was a "helper at Alpha Leasing" turned in the Vehicle at the Louisville Auto Auction in August 2004, which was "past [the lease's] maturity date." *Id.* at 56. Ward testified that "because of the accident it took, you know, it took longer than the termination of the lease to repair the car."[24] *Id.*

Initially, as previously discussed in part, we note that we cannot say that Alpha Leasing's alleged failure to complete the vehicle return waiver or odometer statement for the Vehicle was a breach of the Kentucky Policy or resulted in prejudice to Kentucky National. Completion of those documents was required by the Operating Agreement between Huntington and Alpha Leasing and appears to relate to Carney's return of the Vehicle and to possible costs/fees under the Vehicle's

lease.[25] The documents do not appear to relate to the accident involving the Vehicle, and the Kentucky Policy did not require those particular documents to be completed or maintained. The Kentucky Policy required only that Alpha Leasing permit Kentucky National to inspect any records proving loss that were maintained for the Vehicle. The fact that Alpha Leasing agreed to maintain in its records completed odometer statements and vehicle return waivers for leased vehicles does not necessarily mean that those documents constituted "records proving the 'loss'" of a claim under the Kentucky Policy. *See id.* at 39. Kentucky National did not designate evidence establishing that the odometer statement and the vehicle return waiver constituted records proving loss under the Kentucky Policy.[26] *See id.* at 39. Nor did Kentucky National designate evidence establishing that Alpha Leasing refused to permit it to review or inspect any other documents which may have constituted records proving loss. Further, Kentucky National did not designate evidence showing that it suffered prejudice as a result of Alpha Leasing's alleged noncom-

---

**24.** In its brief, Kentucky National cites to pages 63 through 69 of Ward's deposition. However, only pages 63 through 66 of Ward's deposition were attached to its memorandum in support of its motion for summary judgment. Pages 67 through 69 of the deposition can be found in Kentucky National original appellant's appendix. Although not designated as evidence, we note that Ward's testimony found in pages 67 through 69 related to a conversation between Ward and Carney after the accident. Kentucky National cites pages 63 through 69 of Ward's deposition in support of its argument that Alpha Leasing " 'liquidated' the vehicle through auction." *See* Appellant's Brief at 15 n.53. Even if pages 67 through 69 were attached to Kentucky National's memorandum in support of its motion for summary judgment, it is unclear how Ward's testimony regarding his conversation with Carney supports the fact that the Vehicle

was liquidated or Kentucky National's more general argument that Alpha Leasing failed to permit inspection of the Vehicle.

**25.** According to paragraphs 9 and 22 of the Vehicle's lease, a lessee may receive a mileage allowance credit based upon the number of actual miles driven by the lessee. It appears that these provisions may not have applied to Carney because his lease was designated as one with a "low Mileage Allowance." *See* Appellant's Appendix at 42.

**26.** As previously noted, it does not appear that the Vehicle's mileage was a factor in determining the early termination fee under the lease because Carney had a low-mileage allowance. Also, it appears that Alpha Leasing's claim under the Kentucky Policy related primarily to the Speakes Lawsuit.

pliance with respect to failing to permit it to inspect records proving loss.

With respect to Kentucky National's argument that it need not provide coverage to Alpha Leasing because it was not permitted to inspect the Vehicle prior to its repair, the record reveals that Kentucky National designated evidence (Ward's deposition testimony) that the Vehicle was repaired before it received notice that the Vehicle was involved in an accident. Here, we need not address these issues because, even if Alpha Leasing's actions to have the Vehicle repaired before Kentucky National had an opportunity to inspect it constituted noncompliance with Section IV.A.2.C, we observe that Kentucky National failed to designate any evidence showing that it sustained any prejudice as a result of the alleged noncompliance. *See Rosi*, 615 N.E.2d at 434 (observing that we may not reverse summary judgment unless the relevant evidence was *"specifically designated* to the trial court."); *Rood*, 844 N.E.2d at 506 (noting that "we may not reverse a ruling on summary judgment on the ground that there is a genuine issue of material fact unless the material fact and the relevant evidence have been specifically designated to the trial court.").

Based upon the record and designated evidence, we cannot say that Kentucky National established that Alpha Leasing failed to permit it to inspect records proving loss or that Kentucky National suffered any prejudice as a result of any noncompliance with Section IV.A.2.C. of the Kentucky Policy by Alpha Leasing. Construing all facts and reasonable inferences drawn from those facts in favor of the nonmovants, we cannot say that the trial court improperly denied Kentucky National's motion for summary judgment upon the basis that Alpha Leasing failed to permit inspection of the Vehicle or records proving loss. *See Newark Ins. Co.*, 520 S.W.2d at 321 (noting that there was no claim by the insurer that any of the legitimate protective purposes of the policy condition at issue was impaired or that the insurer suffered any prejudice from the alleged noncompliance of the insured) (cited and approved of by *Jones*, 821 S.W.2d at 803).

### C. *Concealment or Misrepresentation by Alpha Leasing*

■ Kentucky National argues that the trial court erred in denying its motion for summary judgment upon the basis that Alpha Leasing concealed or misrepresented material facts. Specifically, Kentucky National points to Section IV.B.2. of the Kentucky Policy and argues that "[w]hen [Alpha Leasing] took possession of the Vehicle from Carney, Alpha concealed the fact that Alpha kept the Vehicle instead of returning the Vehicle to Huntington...." Appellant's Brief at 7. Kentucky National also argues that "[b]y keeping the Vehicle, [Alpha Leasing] defrauded Huntington out of the early termination penalty required under Huntington's lease with Carney." *Id.*

Alpha Leasing argues that the vehicle return policy relied upon by Kentucky National is not applicable because it does "not apply to vehicles being returned by lessees prior to lease maturity." Appellee Alpha Leasing's Brief at 10 (citing Huntington's vehicle return policy). In addition, Alpha Leasing argues that "Kentucky National has not and cannot cite this Court to any Kentucky National policy provision or law in either Kentucky or Indiana which required it to notify Kentucky National when it took position [sic] of vehicles in the service of client accounts." *Id.* at 8. Alpha Leasing also argues that "Huntington received the full benefit of the lease between Huntington and Mr. Carney." *Id.* at 10. Huntington argues that "there is no claim

by Kentucky National that Alpha Leasing in any way misrepresented *to Kentucky National* what it was doing with the [Vehicle]." Appellee Huntington's Brief at 17. Huntington also argues that "Kentucky National does not identify a 'material fact' that was misrepresented to it." *Id.*

Section IV.B.2. of the Kentucky Policy provided:

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other 'insured', at any time, intentionally conceal or misrepresent a material fact concerning:

(a) This Coverage Form;

(b) The covered "auto";

(c) Your interest in the covered 'auto'; or

(d) A claim under this Coverage Form.

Appellant's Supplemental Appendix at 39.

Under the Operating Agreement between Huntington and Alpha Leasing, Alpha Leasing was required to notify Huntington of any loss or damage sustained by the motor vehicle. Pursuant to Section K of the Operating Agreement, Alpha Leasing had the sole responsibility for any actions or omissions in connection with the leases, any failure to deliver the vehicle or to perform services, and any failure to sell or dispose of any trade-in or any failure to pay in full the prior financing obligation on the trade-in. Huntington's vehicle return policy stated that "Alpha Leasing will be responsible for ensuring the vehicle is returned within (5) business days of pick up and that adequate insurance coverage is carried to cover the care and custody of the vehicle while in their possession." Appellant's Supplemental Appendix at 73; Appellant's Appendix at 181. However, the return policy also stated: "Alpha Leasing may only return vehicles on behalf of

the lessee, as outlined in the provisions below, provided the lease has reached maturity. This policy does not apply to vehicles being returned by lessees prior to lease maturity." Appellant's Supplemental Appendix at 73; Appellant's Appendix at 181.

Given the terms of the Operating Agreement and Huntington's vehicle return policy, and especially in light of the fact that insurance policy contracts must be liberally construed and any doubts resolved in favor of the insured, *State Farm Mut. Auto. Ins.*, 413 S.W.2d at 347, we cannot say that the evidence designated by Kentucky National shows that Alpha Leasing "intentionally conceal[ed] or misrepresent[ed] a material fact" to Kentucky National. *See* Appellant's Supplemental Appendix at 39 (quoting Section IV.B.2. of the Kentucky Policy). Indeed, by its express terms, Huntington's return policy, which included the requirement that vehicles be "returned within (5) days of pick up," did not apply "to vehicles being returned by lessees prior to lease maturity." Appellant's Supplemental Appendix at 73; Appellant's Appendix at 181. In fact, Huntington's return policy appears to prohibit Alpha Leasing from returning vehicles on behalf of lessees prior to those vehicles' lease maturities. *See* Appellant's Supplemental Appendix at 73; Appellant's Appendix at 181 ("Alpha Leasing may only return vehicles on behalf of the lessee, as outlined in the provisions below, provided the lease has reached maturity."). Here, Carney returned the Vehicle prior to the Vehicle lease's maturity, and therefore the five-day return requirement contained in the vehicle return policy was not applicable.

Moreover, with respect to Kentucky National's argument that "Alpha [Leasing] concealed the fact that Alpha kept the Vehicle instead of returning the Vehicle to

Huntington," *see* Appellant's Brief at 7, Kentucky National does not point to any designated evidence which shows that Alpha Leasing misrepresented or concealed a material fact to Kentucky National. In particular, Kentucky National does not point to any provision of the Kentucky Policy which required Alpha Leasing to notify Kentucky National that it took possession of the Vehicle from Carney prior to the lease's maturity.[27] We cannot say that the trial court erred in denying summary judgment to Kentucky National upon the basis that Alpha Leasing concealed or misrepresented material facts.[28] *See Rosi*, 615 N.E.2d at 434 (observing that appel-

late courts are prohibited "from reversing summary judgment orders on the ground that there is a genuine issue of material fact unless the material facts and relevant evidence were *specifically designated* to the trial court."); *Rood*, 844 N.E.2d at 506 ("On appeal, we may not reverse a ruling on summary judgment on the ground that there is a genuine issue of material fact unless the material fact and the relevant evidence have been specifically designated to the trial court.").

We affirm the trial court's ruling with respect to Kentucky National and Alpha Leasing's motions for summary judgment.[29]

---

27. While the Operating Agreement between Huntington and Alpha Leasing designated by Kentucky National may require Alpha Leasing to notify Huntington if certain events occur, Kentucky National does not point to any provision of the Kentucky Policy requiring Alpha Leasing to give Kentucky National notification when a lessee of a vehicle delivers possession of the vehicle prior to the lease's maturity.

28. Kentucky National also argues that Alpha Leasing committed the criminal offense of "theft by unlawful taking" by "intentionally keeping the Vehicle instead of returning it to Huntington" and the " 'tort' of conversion" by "[keeping] the Vehicle for a longer period of time than the five (5) days authorized by Huntington...." Appellant's Brief at 8–9. However, we observe that Kentucky National does not cite to any designated evidence showing or develop an argument that any "theft by unlawful taking" or " 'tort' of conversion" committed by Alpha Leasing would constitute fraud, concealment, or misrepresentation for the purposes of Section IV.B.2. of the Kentucky Policy or would void coverage under another provision of the Kentucky Policy. Because Kentucky National fails to put forth a cogent argument, this argument is waived. *See Loomis*, 764 N.E.2d at 668 (holding argument waived for failure to cite authority or provide cogent argument).

Moreover, the only basis provided by Kentucky National in support of its arguments that Alpha Leasing committed a criminal of-

fense or the tort of conversion is that Alpha Leasing "kept the Vehicle for a longer period of time than the five (5) days authorized by Huntington...." *See* Appellant's Brief at 8–9. However, as previously noted, the return policy which included the requirement that vehicles be "returned within (5) days of pick up" did not apply "to vehicles which were returned prior to lease maturity." Appellant's Supplemental Appendix at 73; Appellant's Appendix at 181.

29. In one of its reply briefs, Kentucky National argues that "[t]he way to determine financial responsibility in this type of suit is to analyze and prioritize each party's position," and that "[g]oing straight to known insurance companies and skipping over other parties is unjust and premature." Kentucky National's Reply Brief to Huntington's Brief at 7. In support of this argument, Kentucky National states that "Huntington is ultimately responsible for its property, regardless of who is in control (unless control has been obtained illegally)." *Id.* at 8. However, we observe that the Operating Agreement between Huntington and Alpha Leasing required Alpha Leasing to procure and deliver to the lessees the vehicles to be leased, to obtain all available warranties and guarantees applicable to the vehicles, and to verify that a lessee had in effect insurance for the motor vehicle prior to delivery of a vehicle. Also, Section K of the Operating Agreement provided that Alpha Leasing had the sole responsibility for the condition and performance of all leased vehicles, any actions or omissions in connection with the

## II.

The next issue is whether the trial court erred in ruling on Empire Fire's motion for summary judgment. On cross-appeal, Empire Fire argues that the trial court erred in denying its motion for summary judgment upon the grounds that the Empire Policy did not cover the Vehicle. Empire Fire also appears to argue that it is not estopped as a matter of law from raising non-coverage defenses. Kentucky National argues that the trial court erred in ruling that Empire Fire waived its alleged defenses to coverage by making partial payments of claims related to the accident. Kentucky National also appears to argue that the coverage provided by the Empire Policy is not secondary to and in excess of the coverage provided by the Kentucky Policy. We address each of these arguments separately.

### A. *Coverage of the Vehicle under the Empire Policy*

■ Empire Fire argues that the trial court erred in denying its summary judgment motion regarding coverage of the Vehicle under the Empire Policy.

Section I.A. of the Empire Policy included a description of the vehicles covered. Section I provided that "[t]he symbols entered next to a coverage on the Declarations designate the only 'autos' that are covered 'autos.'" Appellee's Supplemental Appendix at 17. The Declarations page of the Empire Policy indicated that the "Covered Autos" included those described under "Symbol 10." *Id.* at 13. The "CONTINGENT, EXCESS AND INTERIM LIABILITY COVERAGE ENDORSE-MENT" to the Empire Policy set forth Symbol 10, which provided:

> "LEASED AUTO"(s). Only those "autos" described as follows.
>
> (a) Any "auto" you lease to others for a period of not less than twelve (12) consecutive months under a written lease agreement that requires the lessee to provide primary liability insurance for you;
>
> (b) Any substitute or replacement "auto" for an "auto" described in (a) above and any extra "auto" needed to meet seasonal or other needs, provided that any such extra "auto" is leased to a lessee of an "auto" leased from you for a period of not less than twelve (12) consecutive months under a written lease agreement, that requires the lessee to provide primary liability insurance for you;
>
> (c) Autos leased, or to be leased from you but only between the time they are registered and/or titled in your name and the time of delivery to any lessee or his/her/its representative;
>
> (d) Autos titled and/or registered in your name and leased by you to any lessee, but only between the time that such an "auto" is surrendered by the lessee, or his/her/its representative, to you or your representative, and the time that any such "auto" is sold and legal transfer of ownership has been consummated.

*Id.* at 36. The Empire Policy also provided that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." *Id.* at

---

leases, any failure to deliver the vehicle or to perform services, and any failure to sell or dispose of any trade-in or any failure to pay in full the prior financing obligation on the trade-in. In addition, Huntington's vehicle return policy required "that adequate insurance coverage is carried to cover the care and custody of the vehicle while in [Alpha Leasing's] possession." Appellant's Supplemental Appendix at 73; Appellant's Appendix at 181.

17. The Named Insured shown in the Declarations was Alpha Leasing.

Empire Fire argues that "[t]here is no coverage for the Vehicle under the Empire Policy because the Vehicle does not fall within any of these four 'leased auto' categories." Appellee/Cross–Appellant Empire Fire's Brief at 21. With respect to subparagraph (a) of Symbol 10, Empire Fire argues that the phrase " 'auto' you lease to others" does not include the Vehicle. Specifically, Empire Fire argues that Alpha Leasing was neither the lessee nor the lessor under the Vehicle's lease. Empire Fire also argues that the Vehicle's lease did not require the individual lessee to provide primary liability insurance for Alpha Leasing. Empire Fire further argues that the Vehicle was not covered by subparagraph (d) because "[t]he Vehicle was neither titled to nor registered in Alpha Leasing's name." *Id.* at 23. Empire Fire also argues that the Vehicle was not a leased auto under subparagraphs (b) or (c) of Symbol 10, and that, even if the language of Symbol 10 of the Empire Policy is ambiguous, "the designated evidence established that Alpha Leasing and Empire intended for the Empire Policy to cover only in-house leases (where Alpha Leasing was both the owner and lessor)." *Id.* at 24.

Alpha Leasing appears to argue that it leased the Vehicle within the meaning of the Empire Policy when it brokered or arranged the lease between Carney and Huntington. Also, Alpha Leasing argues that "[t]he clear purpose behind the provision [requiring vehicle lessees to provide insurance coverage for Alpha under subparagraph (a) ] is to make the person leasing the vehicle primarily responsible for insurance coverage," and that "[t]he Empire policy does not require that Alpha Leasing be listed specifically as an addi-

tional insured under Mr. Carney's policy." Appellee Alpha Leasing's Brief at 5.

In its order, the trial court stated: "The language in Paragraph A, Item 7, Covered Autos, Symbol 10(A) of the Empire Policy is ambiguous and the Vehicle leased to Defendant, Ronald Carney, through the efforts of Alpha Leasing, and driven by Royse at the time of the Accident is a covered auto under the Empire Policy." Appellant's Appendix at 25. Indeed, the parties argue about the correct and reasonable interpretation of that portion of subparagraph (a) of Symbol 10 which required an auto covered under that subparagraph to be an " 'auto' you *lease to* others." Appellee's Supplemental Appendix at 36 (emphasis added).

However, we also observe that another requirement of subparagraph (a) of Symbol 10 was not satisfied. Subparagraph (a) provided that the written lease agreement pertaining to the auto required the lessee of the auto "to provide primary liability insurance for you." *See* Appellee's Supplemental Appendix at 36. As previously noted, the Empire Policy provided that "the words 'you' and 'your'" referred to the Named Insured shown in the Declarations, and the Named Insured shown in the Declarations was Alpha Leasing. *See id.* at 17. Here, Empire Fire designated evidence showing that the lease for the Vehicle did not require Carney as the lessee to provide primary liability insurance for Alpha Leasing. Section 18 of the Vehicle's lease provided that the lessee agreed to provide liability insurance coverage for the Vehicle and that the insurance policy obtained by the lessee "must name Lessor as additional insured and loss payee." Appellee's Supplemental Appendix at 208. The Lessor under the Vehicle's lease was Huntington. Therefore, we conclude that the Vehicle was not an auto described under subparagraph (a) of Symbol 10 of

the Empire Policy. The Vehicle was also not described under subparagraph (b) of Symbol 10 as a "substitute or replacement 'auto' for an 'auto' described in (a)" or an " 'auto' needed to meet seasonal or other needs," which also required the lessee to provide primary liability insurance for Alpha Leasing. Appellee's Supplemental Appendix at 36.

We also observe that the Vehicle was not described under subparagraphs (c) or (d) of Symbol 10 of the Empire Policy. Subparagraphs (c) and (d) described autos that were "titled and/or registered in your name." *Id.* at 36.[30] Here, Empire Fire designated evidence showing that the Vehicle was not titled to Alpha Leasing or registered in Alpha Leasing's name. Specifically, Empire Fire designated a portion of Ward's deposition revealing that Ward testified that the Vehicle was not registered to Alpha Leasing at the time of the accident. Empire Fire also designated a portion of Leidgen's deposition revealing that Leidgen testified that the Vehicle was not titled to or registered in the name of Alpha Leasing at the time of the accident.

The Vehicle was not an auto described under subparagraphs (a), (b), (c), or (d) of Symbol 10 of the Empire Policy. As a result, the Vehicle was not a "LEASED AUTO" under Symbol 10 of the Empire Policy. *See* Appellee's Supplemental Appendix at 36. We reverse the trial court's order to the extent that it determined that the Vehicle was covered under Symbol 10 of the Empire Policy and grant summary judgment to Empire Fire on this issue.

**B. *Waiver of Non–Coverage Defenses by Making Payments***

■ Kentucky National appears to argue that the trial court erred in granting summary judgment to Empire Fire on the issue of whether Empire Fire waived its alleged defenses to coverage by making partial payments of claims related to the accident involving the Vehicle.[31] The trial court's order provided that "Empire Fire did not waive its non-coverage defense by making partial payments of claims related to the Accident." Appellant's Appendix at 26.

Kentucky National argues that the payments made by Empire Fire to Speakes "were neither 'advance' nor 'partial' payments," but instead were payments which "fully extinguished the property damage

---

30. As previously mentioned, the Empire Policy provided that the words " 'you' and 'your' " referred to the "Named Insured shown in the Declarations," and that the Named Insured shown in the Declarations was Alpha Leasing. Appellee's Supplemental Appendix at 17.

31. Specifically, Kentucky National argues that Empire Fire "is barred by waiver, estoppel and laches from prevailing on alleged defenses to coverage." Appellant's Brief at 18. Initially, we note that Empire Fire did not raise laches in its motion for summary judgment and that Alpha Leasing did not raise laches as an affirmative defense in its answer. Also, we note that the trial court granted summary judgment to Empire Fire solely upon the grounds that it did not waive its non-coverage defense by making partial payments of claims related to the accident. The trial court's order also stated that "[a]ll other pending Motions are DENIED as there are genuine issues of material fact which preclude the entry of summary judgment." Appellant's Appendix at 27. Under Kentucky law, "[w]aiver and estoppel, as applied to contracts of insurance, are terms often used interchangeably, but this obscures their meaning. The two are separate and distinct concepts." *Howard v. Motorists Mut. Ins. Co.*, 955 S.W.2d 525, 526 (Ky.1997) (internal quotation marks omitted and quoting in part *Edmondson v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 755 (Ky.1989)). Thus, it appears that the trial court denied Empire Fire's motion for summary judgment on the issue of whether Empire Fire is estopped from raising non-coverage defenses.

claims (including towing, storage, rental, etc.) of Julie Speakes." Appellant's Brief at 19. Kentucky National appears to argue that Alpha Leasing was prejudiced by Empire Fire's delay in asserting its policy defenses in part because the delay was the reason that Alpha Leasing did not "put its alternate carrier (Kentucky National) on notice of the accident or Ms. Speake's [sic] claims," and that "[i]n the event that late notice to Kentucky National bars coverage to Alpha, Alpha will have suffered significant prejudice, all because Empire failed to give Alpha prompt notice of Empire's intention to exercise coverage defenses." *Id.* at 20. Empire Fire argues that it made partial payments to Speakes and to Alpha Leasing and that under Kentucky law it did not waive its right to contest coverage by making those partial payments. Empire Fire also argues that the evidence does not show that it made payments "that fully extinguished [Speakes's] property damage claims," but rather that it sent Speakes checks to cover some of her property damage, but that Speakes returned the payment. *See* Appellee Empire Fire's Brief at 14.

The Kentucky Supreme Court has stated that "waiver is 'bottomed on a voluntary and intentional relinquishment of a known, existing right or power under the terms of an insurance contract.'" *Howard v. Motorists Mut. Ins. Co.*, 955 S.W.2d 525, 526 (Ky.1997) (quoting *Edmondson v. Pa. Nat. Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 755 (Ky.1989) (quoting Long, THE LAW OF LIABILITY INSURANCE § 17.14)). "[I]t is textbook law that a waiver must be intentional." *Edmondson*, 781 S.W.2d at 755. "The insurer may clearly waive policy provisions inserted for its benefit, but only where it can be shown that the waiver was

the knowing and intentional relinquishment of its policy rights." *Id.* at 756 (quoting Long, § 17.14).

Kentucky Revised Statute § 304.14–280 provides a list of "acts by or on behalf of an insurer" which shall not "be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer . . ." The list includes:

(1) Acknowledgment of the receipt of notice of loss or claim under the policy.

(2) Furnishing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or uncompleted.

(3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim.

(4) Making advance or partial payments under insurance policies as an accommodation to or on behalf of any person suffering injury, loss or damage, and any such payment shall be credited to the final settlement or judgment.

KY REV. STAT. § 304.14–280 (cited by *Edmondson*, 781 S.W.2d at 756).

Here, in support of its argument, Kentucky National points to Speakes's responses to requests for admissions.[32] Speakes's responses to requests for admissions reveal that Empire Fire sent a payment by check to Speakes for property damage to her vehicle as a result of the accident on July 13, 2004. Speakes did not cash or otherwise negotiate the check, but instead returned the check to Empire Fire. Empire Fire sent another check to

---

32. Speakes's responses to admissions do not appear to have been designated as evidence by Empire Fire. Kentucky National attached Speakes's responses to admissions to its response to Empire Fire's motion for summary judgment.

Speakes for reimbursement of her insurance deductible and the rental car expenses which she incurred as a result of the accident, and Speakes cashed that check. Also, Speakes was paid for the property damage to her vehicle by her own insurer, State Farm Insurance Companies. The record does not show that any payment was given to Speakes in connection with any bodily injury she may have sustained as a result of the accident.

Based upon the record, and in light of Kentucky's statutory and case law regarding an insurer's waiver of its policy rights, we cannot say that the trial court erred in determining that Empire Fire did not evidence an intention to waive the terms of the Empire Policy by making payments to Speakes in connection with damage to her vehicle caused by the accident. *See Howard*, 955 S.W.2d at 526–527 (observing that the insurer's untimely refund of the insured's premium might be attributable to flawed procedures, but declining to characterize such action "as the kind of intentional act that establishes a waiver," and noting that the insurer "simply failed to act" and that the insurer "did not intend to waive its right to refuse to renew [the insured's] coverage" under the doctrine of waiver as defined by *Edmondson*, 781 S.W.2d 753); *Edmondson*, 781 S.W.2d at 755 (observing there were no statements or acts on behalf of the insurer evidencing an intention to waive the policy terms where the insurer sent a settlement offer to the insured).

## C. *Estoppel of Empire Fire*

▮ Empire Fire argues that "[t]he trial court properly ruled that Empire was entitled to summary judgment in its favor on the waiver and estoppel defenses of Kentucky National and Alpha Leasing. The trial court's ruling should be affirmed." Appellee Empire Fire's Brief at

19. However, as noted in Section II.B. of this opinion, the trial court granted Empire Fire's motion for summary judgment solely upon the grounds that "Empire Fire did not waive its non-coverage defense by making partial payments of claims related to the Accident." *See* Appellant's Appendix at 26. The trial court's order also stated that "[a]ll other pending Motions are DENIED as there are genuine issues of material fact which preclude the entry of summary judgment." *Id.* at 27. Under Kentucky law, "[w]aiver and estoppel, as applied to contracts of insurance, are terms often used interchangeably, but this obscures their meaning. The two are separate and distinct concepts." *Howard*, 955 S.W.2d at 526 (quoting in part *Edmondson*, 781 S.W.2d at 755) (internal quotation marks omitted). Thus, it appears that the trial court denied Empire Fire's motion for summary judgment on the issue of whether Empire Fire is estopped from raising non-coverage defenses.

Under Kentucky law, estoppel "offsets misleading conduct, acts, or representations which have induced a person to rely thereon to change his position to his detriment." *Howard*, 955 S.W.2d at 527 (citations omitted). The following are the elements of estoppel:

(1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied upon this conduct to his detriment.

*Id.* (citation omitted).

▮ In addition, the doctrine of estoppel may preclude an insurer from avoiding liability under an insurance policy where

the insurer undertakes the defense of an accident case. In *American Cas. Co. of Reading, Pa. v. Shely,* the Kentucky Court of Appeals [33] addressed the effect of an insurer's decision to defend its insured for almost a year without a reservation of rights. 314 Ky. 80, 234 S.W.2d 303 (Ky. 1950). In *Shely,* after receiving notice of a claim under its policy, the insurer referred the defense of the case to legal counsel who investigated the case. *Id.* at 81, 234 S.W.2d at 304. After nearly a year, the insurer notified the insured that its policy did not cover the action, and that any action taken was in full reservation of all its rights under the policy. *Id.* at 81–82, 234 S.W.2d at 304. The court observed:

> Broadly speaking an insurance company which undertakes or continues the defense of an action against insured with knowledge or means of knowledge of grounds for avoiding its liability to insured, and without due notice to insured of its disclaimer of liability, will on principles of waiver and estoppel be precluded from thereafter avoiding liability under the policy on such grounds. . . .

314 Ky. at 83–84, 234 S.W.2d at 305 (citing 45 C.J.S. Insurance § 714). The court also observed that "[o]ne of the basic elements of an estoppel is that the person claiming it must have been prejudiced by the action of the person against whom it is asserted." 314 Ky. at 84, 234 S.W.2d at 305. "Generally the courts hold that where an insurance company undertakes the defense of an accident case, the loss of the right by the insured to control and manage the case is itself a prejudice." *Id.* The highest court in Kentucky has since reiterated its holding in *Shely.* In *Hood v. Coldway Carriers, Inc.,* the court held that an insurer was not permitted to deny liability under the doctrine of estoppel, noting that the insurer "knew the circumstances that gave rise to the accident as well as the provision of its policy upon which it could have denied liability," that the insurer defended the insured without obtaining a reservation of its rights, and that "[t]he loss of a right to control and manage one's own case is itself a prejudice." 405 S.W.2d 672, 673 (Ky.1965). *See also The Western Casualty & Surety Co. v. Frankfort,* 516 S.W.2d 859, 861 (Ky.1974) (recognizing the holding in *Shely* but noting that the insurer's action of "simply filing an answer did not deprive the [insured] of any substantial right to manage the defense of the suit"); *Universal Underwriters Ins. Co. v. The Travelers Ins. Co.,* 451 S.W.2d 616, 622 (Ky.1970) (setting forth the holding in *Shely* but noting that the insured did not lose the right to control and manage the case because the attorney who was conducting the defense of the insured remained on the case along with the insured's other insurer).[34]

**33.** As previously noted, the Kentucky Court of Appeals was the highest court in Kentucky prior to 1976.

**34.** Empire Fire cites to *Old Republic Ins. Co. v. Begley,* 314 S.W.2d 552, 557 (Ky.1958), for the proposition that "a contract of insurance cannot be enlarged by estoppel or waiver." *See* Appellee/Cross–Appellant Empire Fire's Brief at 15. However, Empire Fire did not raise this argument in its motion for summary judgment. Thus, Empire Fire may not raise the argument on appeal. *See Frances Slocum Bank and Trust Co. v. Estate of Martin,* 666 N.E.2d 411, 413 (Ind.Ct.App.1996) ("A party who raises an issue on appeal that was not raised in the trial court waives that issue.") (citing *Franklin Bank & Trust Co. v. Mithoefer,* 563 N.E.2d 551, 553 (Ind.1990)), *trans. denied.*

We also note that *Old Republic Ins. Co.,* 314 S.W.2d 552, was a workman's compensation case and addressed a question of coverage under provisions of a Kentucky statute that were deemed to be a part of the terms of the insurance policy. Our research has not revealed a published Kentucky case citing to *Old Republic Ins. Co.* for the proposition that an insurer may undertake a defense of an

Here, Empire Fire states that it is not estopped from raising non-coverage defenses based upon the fact that it made partial payments of claims related to the accident involving the Vehicle. Empire Fire does not cite to Kentucky authority, develop an argument, or designate evidence in support of an argument that the requirements of estoppel were not satisfied in this case. Consequently, this argument is waived. *See Loomis*, 764 N.E.2d at 668 (holding argument waived for failure to cite authority or provide cogent argument). Waiver notwithstanding, we will attempt to address the merits of Empire Fire's arguments.

Empire Fire points to Speakes's responses to requests for admissions.[35] Speakes's responses to requests for admissions pertain to whether Empire Fire made partial payments of claims to Speakes. However, Empire Fire does not point to designated evidence establishing that it cannot be estopped from raising defenses to coverage as a matter of law. For instance, Empire Fire does not point to designated evidence showing that it sent a communication to Alpha Leasing reserving its rights; that Alpha Leasing was not deprived of any substantial right to control and manage the defense of its case in the

Speakes Lawsuit; that Alpha Leasing was not otherwise prejudiced by Empire Fire's level of involvement in the Speakes Lawsuit; or that Empire Fire did not know the circumstances that gave rise to the accident involving the Vehicle.

Based upon the record, and construing all facts and reasonable inferences drawn from those facts in favor of the nonmovant and limiting our review to those materials designated to the trial court, *see Mangold*, 756 N.E.2d at 973, we cannot say that there are no issues of material fact with respect to whether Empire Fire is estopped from denying liability under the Empire Policy in connection with the accident involving the Vehicle. *See Hood*, 405 S.W.2d at 673 (holding that the insurer was not permitted to deny liability under the doctrine of estoppel where the insurer "knew the circumstances that gave rise to the accident as well as the provision of its policy upon which it could have denied liability," the insurer defended the insured without obtaining a reservation of its rights, and the insured lost the "right to control and manage" its own case); *Shely*, 314 Ky. at 81–84, 234 S.W.2d at 304–305 (holding that the insurer was estopped from denying liability under its policy where the insurer undertook the defense

---

insured without obtaining a reservation of rights and subsequently withdraw representation and deny coverage. On the other hand, we observe that, after the *Old Republic Ins. Co.* decision, the highest court in Kentucky has cited *Shely* in a number of decisions. *See Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 523 (Ky.1987); *The Western Casualty & Surety Co. v. Frankfort*, 516 S.W.2d 859, 861 (1974); *Universal Underwriters Ins. Co. v. The Travelers Ins. Co.*, 451 S.W.2d 616, 622 (1970); *Hood v. Coldway Carriers, Inc.*, 405 S.W.2d 672, 673 (Ky.1965). Significantly, several Kentucky cases applying the doctrine of estoppel involved an insurer who denied coverage based upon the terms of its insurance policy describing coverage. *See Hood*, 405 S.W.2d 672, 673 (holding that the insurer was

not permitted to deny liability under the doctrine of estoppel where the insurance policy did not provide coverage); *Shely*, 314 Ky. 80, 81, 234 S.W.2d 303, 304 (noting that the insurer notified its insured that the insurance policy did not cover the action).

**35.** Interestingly, although Empire Fire cites to Speakes's responses to requests for admissions in support of its arguments, Empire Fire also argues that Speakes's responses to requests for admissions "do not appear to have been designated by any party as evidence in support of or in opposition to any summary judgment motion, and cannot be used by Kentucky National now." Appellee Empire Fire's Brief at 14.

of the accident case and later notified its insured that the insurance policy did not cover the action). The trial court did not error in denying Empire Fire's motion for summary judgment on this issue.

## D. *Priority of Coverage*

■■■■ Kentucky National argues that the coverage provided by the Empire Policy is not secondary to and in excess of the coverage provided by the Kentucky Policy. Specifically, Kentucky National appears to argue that the "other insurance" clause of the Empire Policy may not be enforced because Empire Fire "used language in its policy which creates a genuine ambiguity." Appellant's Brief at 21. Empire Fire argues that the trial court correctly determined that any coverage available under the Empire Policy was secondary and excess to the coverage under the Kentucky Policy. Empire Fire also argues that Kentucky National has waived its right to contest the trial court's determination as to the priority of coverage.

Initially, we observe that Kentucky National did not cite to any authority in support of or develop its argument that the "other insurance" clause of the Empire Policy "creates a genuine ambiguity." *See id.* As a result, Kentucky National's argument that the Empire Policy is not excess and secondary to the Kentucky Policy is waived. *See Loomis,* 764 N.E.2d at 668 (holding argument waived for failure to cite authority or provide cogent argument).

Even if Kentucky National did not waive its argument, we observe that coverage provided under the Empire Policy was excess to the coverage under the Kentucky Policy. The Empire Policy contained an endorsement titled "CONTINGENT, EXCESS AND INTERIM LIABILITY COVERAGE ENDORSEMENT," which stated that Section IV.B.5. of the Empire Policy,

titled "Other Insurance," provided: "It is agreed that the insurance afforded by this policy and Coverage Form is excess over any other collectible insurance whether primary, excess, contingent or self insurance, unless such insurance is specifically written to apply in excess of this policy." Appellee's Appendix at 25; Appellee's Supplemental Appendix at 37.

Subparagraph a. of Section IV.B.5. of the Kentucky Policy, titled "OTHER INSURANCE," stated in relevant part: "For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." Appellant's Appendix at 133; Appellant's Supplemental Appendix at 82. Subparagraph b. of Section IV.B.5. provided in relevant part: "When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share." *Id.* The subparagraph also provided that "[o]ur share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis." *Id.*

We first note that the "Other Insurance" provision contained in the Empire Policy stated that coverage was excess over any other collectible insurance "unless such insurance is *specifically written to apply in excess of this policy.*'" Appellee's Appendix at 25; Appellee's Supplemental Appendix at 37 (emphasis added). Although the Kentucky Policy contains an "excess clause" which provided that coverage was excess over any other collectible insurance, that excess clause did not specifically state that it was excess to the Empire Policy. *See* Appellant's Appendix at 133; Appellant's Supplemental Appendix at 82.

Furthermore, Section IV.B.5.b. of the Kentucky Policy contained a pro rata provision which applied in the event that cov-

erage under any other collectible insurance was available "on the same basis, whether excess or primary...." *See* Appellant's Appendix at 133; Appellant's Supplemental Appendix at 82. The "other insurance" section of the Empire Policy did not include a pro rata provision.[36] "Kentucky law is well settled that when a policy containing a pro rata 'other insurance' clause conflicts with a policy having an excess 'other insurance' clause, the policy with the pro rata provision should be applied first and the policy with the excess clause would become effective only when the first policy is exhausted." *Standard Fire Ins. Co. v. Empire Fire and Marine Ins. Co.,* 234 S.W.3d 377, 380 (Ky.Ct.App.2007). Under Kentucky law, coverage under the Empire Policy was excess and becomes effective only when coverage under the Kentucky Policy is exhausted. *See id.* (holding that, where two policies stated that their coverage was excess for any non-owned vehicle but where one of the policies also included a 'pro rata' clause, the coverage under the insurance policy that did not include the pro rata clause was excess to coverage under the insurance policy which contained the pro rata clause); *see also Hartford Ins. Co. v. Ky. Farm Bureau Ins. Co.,* 766 S.W.2d 75, 76 (Ky.Ct.App.1989) (adopting "the majority rule" that a " 'pro rata' clause in one policy and the 'excess' clause in the other are not held to be mutually repugnant and the policy containing the pro rata provision must be exhausted first up to its policy limits").[37]

---

**36.** "Other insurance" clauses in insurance policies usually take one of three forms. A pro rata clause apportions liability among concurrent insurers. An excess clause restricts liability upon an insurer to excess coverage after another insurer has paid up to its policy limits. An escape clause purports to avoid all liability in the event of other insurance. *See Cincinnati Ins. Co. v. Am. Alternative Ins. Corp.,* 866 N.E.2d 326, 329 (Ind.Ct. App.2007), *trans. denied.*

**37.** Other jurisdictions follow the "Lamb–Weston" rule or the "Oregon" rule, which was developed in *Lamb–Weston, Inc. v. Or. Auto. Ins. Co.,* 219 Or. 110, 341 P.2d 110 (1959). In that case, the Oregon Supreme Court held that when any "other insurance" clause of one insurance policy is in conflict with any "other insurance" clause of another insurance policy, regardless of the nature of the clauses (an excess clause, an escape clause, or a pro rata clause), the "other insurance" clauses are "repugnant and each should be rejected in toto." 219 Or. 110, 129, 341 P.2d 110, 119.

It appears that the Indiana Supreme Court adopted the "Lamb–Weston" rule for resolving "other insurance" clause disputes. *Ind. Ins. Co. v. Am. Underwriters, Inc.,* 261 Ind. 401, 404–408, 304 N.E.2d 783, 786–789 (1973); *see Cincinnati Ins. Co.,* 866 N.E.2d at 329–330 (noting that the Indiana Supreme Court adopted the "Lamb–Weston" rule in 1973), *trans. denied.* "As adopted by [the Indiana Supreme Court], this rule provides, 'where "other insurance" clauses conflict, ... they are to be ignored and each insurer is liable for a prorated amount of the resultant damage not to exceed his policy limits. In such a case, there exists *dual* primary liability.' " *Cincinnati Ins. Co.,* 866 N.E.2d at 330 (citing *Indiana Ins. Co.,* 261 Ind. at 407, 304 N.E.2d at 787). *See also* David P. Van Knapp, J.D., Resolution of conflicts, in non-automobile liability insurance policies, between excess or pro-rata "other insurance" clauses, 12 A.L.R.4th 993, § 4 (1982) (discussing the "Lamb–Weston" rule and collecting cases which have adopted and have declined to adopt the rule); W.R. Habeeb, Apportionment of liability between automobile liability insurers where one of the policies has an "excess insurance" Clause and the other a "proportionate" or "prorata" clause, 76 A.L.R.2d 502 (1961) (discussing the "Lamb–Weston" rule and cases addressing excess insurance clauses). This court has since held that *"Indiana Insurance* and cases relying on it are no longer valid authority because of a subsequent statutory development." *Cincinnati Ins. Co.,* 866 N.E.2d at 330. The court observed that the legislature enacted Ind.Code § 27–8–9–7, which the court stated places the "primary responsibility for coverage upon the insurer of the owner of a vehicle" under certain circumstances. *Id.* 330–331.

Whether the Indiana statutory provisions found at Ind.Code § 37–8–9 would govern in

Pursuant to the terms of the two insurance policies, the Kentucky Policy provided primary liability insurance for the Vehicle and the Empire Policy provided only excess coverage. The trial court did not err in granting summary judgment to Empire Fire on this issue.

For the foregoing reasons, the trial court's order is affirmed in part, reversed in part, and remanded.

Affirmed in part, reversed in part, and remanded.

CRONE, J., concurs.

MAY, J., concurs in result.

this case or the "Lamb–Weston" rule would remain valid authority to determine primary coverage where two insurers provide coverage for the same insured, we cannot say that the law in Indiana does not differ from the law in Kentucky. As a result, as previously discussed, we apply the law of Kentucky in this case.